United States Court of Appeals for the Ninth Circuit is now in session. Please be seated. Good morning ladies and gentlemen. Welcome to the Ninth Circuit. Some of us are here and then we have people remote. So is everyone listening right now? So I can make my introductory comments about how I run the calendar. Okay. Basically I'm going to call the cases in the order that are on the calendar. And by each of your cases you have a time designation. Expect to be kept to your time designation. If you are the appellant, the time that you have includes any time you want to reserve for rebuttal. So for example, in the first case, each side has 10 minutes. So if you want to reserve any time for rebuttal, that includes, that's your whole amount of time. When you begin, it's your responsibility to take care, to keep track of the time. However, I am looking at a clock. So if you tell me aspirationally when you come to the podium how much time you'd like to reserve for rebuttal, I'll try to remember. But it's your responsibility to keep track of the time. One thing that I, the clock counts down and then it goes up. So when it goes up, that doesn't mean I gave you more time. It means you've gone into overtime. So your argument may be over very soon thereafter. However, to my colleagues, I know that you as lawyers have things that you want to tell us. But I think you also need to remember that we consider this our time as well. Because we have to decide your case. And I want to make sure that my colleagues have all of their questions answered. So if in fact it's gone into overtime, but one of my colleagues is asking you questions, please feel free to continue to answer that question. My colleagues, you can ask questions as long as you still have questions. Now, there are some of you that the last two cases, I believe people are dividing their time. And so one thing that I want to mention to you, that if you're the second one in the divided time, I've seen people get very and they're afraid they're taking up all of their time. So I will not allow that to happen. If the first person is going overtime, I will call them and make sure that you as the second person get the time that has been designated to you. So you don't need to worry about that. And as well, if my colleagues are asking questions of the first person, and you can see that it goes beyond the time that was allotted, I won't count that time against you. If you're the second person, you'll get the time on the clock that you've asked for. So the first matter on calendar is Tony Buck versus the United States case number 18-77271. Each side has 10 minutes. Good morning to the members of the court and also to the court has certified an issue as to whether Mr. Buck's conviction for armed postal robbery remains as a crime of violence after pursuant to the elements clause after the demise of the residual clause as a result of the United States versus Davis case. And I'm here to answer that that it does not. The parties are in agreement that the statute in question here, which is 2114 A, is a divisible statute. And because it's a divisible statute, there's a 10-year portion above the semicolon and a 25-year portion below the semicolon in the statute. The parties, using a modified categorical approach, are able to look at the Shepard documents available to them. In this case, it's very important to look at the indictment, but more importantly, to look at the jury instructions. Let me just ask you one question straight out. You can answer yes or no to that. Has any other court found that a conviction under 2114 A for putting a victim's life in jeopardy through the use of a dangerous weapon is not a crime of violence under section 924 C? Has any other court found what you're asking us to find? No, not that I'm aware of, Your Honor. Okay. You can go back to your argument then. Thank you. Thank you. And that was something that I definitely wish to address a little bit later on. So if I can just continue for a moment, then I intend to address that issue because I know it's something that would trouble the court and what I'm asking the court to do. Again, we can look at the statute. We can look at the documents. We can look at the jury elements that are involved. And the jury instructions, of course, are very important in this case. Now, before we start, I want to also address the issue. The court has referred to this as an armed postal robbery. And it is not an armed postal robbery case. And the parties agree that Mr. Buck was convicted in counts one and five of assault with intent to steal male matter while putting the victim's life in jeopardy by the use of a dangerous weapon. Now, I understand that there are many cases out there that, for the reason the court has just asked me about, contains what I will refer to an enhancement provision that basically the courts are saying with that enhancement provision, which requires an element that the life of the victim in the case has been put in jeopardy by the use of a dangerous weapon. The screen just went blank, by the way. Can you hear me? I can hear you. Did we lose the other person? Seems like she's not here. I'm here. I'm here. Okay. I'm here. You can stay in front of the screen so we can see. Okay. Sure. Okay. In any way, in any event, I wanted to address the issue that you asked me about. I'm fully aware that there are, and now it's gone blank again, or not blank, but all I see is, hello, Carla DeVord. I'm not seeing the court. Okay. Is this, do you want me to continue? We're stopping the clock for a second. Okay. I can now see the three members of the court. We see you. Okay. We see you, and if counsel for the other side will stay where she is, we'll see her. I always want to see both people. Ms. DeLorde, if you were to mute your microphone, then Ms. Hinchcliffe's video will not change. Now, all I see is a name, Kwame Copeland. Once the judges speak, you'll see them. Okay. Can you see us now, if I'm talking? No. Okay. Now, I see you. Where was I? All right. Let's go back. Can we go back to the 30 seconds on this? I'll just add 30 seconds on. Don't worry about it, because with all of this, you can see us now? Yes, I can. All right. Well, maybe you can answer my question. I asked you the one question, and then I know that you argue that you're saying that it's different means of committing the aggravated offense. Has any other court interpreted the language in Section 2114A as setting out different means of committing the aggravated offense, rather than three distinct elements? No, and I'm not stressing the importance of that at this moment, Your Honor. I know that that information is in the brief, but at this point, the main focus of my argument to the court is that the instructions do not establish that there was an intentional requirement when it comes to establishing a crime of violence in the case. So, in other words, in order- Well, is it your position that the jury could have found the petitioner guilty under Section 2114A for the reckless use of a firearm instead of the intentional use of a firearm? Is that what you're saying? No. No, you're not saying that either? No, I'm not saying that either. Okay. Recklessness would not be allowed in terms of the jury instructions for this particular offense. That's not what I'm saying. What I'm saying is whenever you have- In order for a crime to be considered a crime of violence, there has to be a culpable mental state contained in the jury instructions. And in this particular case, there was no culpable mental state existing in these jury instructions as it relates to the force or the intimidation that is required as stated in the jury instructions. If you look at Borden, Borden insists that there be either a purposeful, intentional, or knowing mens rea requirement in order to establish a crime of violence. And in these jury instructions, there is absolutely no requirement of any type of culpable mental state. And that's the basis of the argument, Your Honor. Now, as to all those cases that say if a victim's life is put in jeopardy by the use of a dangerous weapon, and there are many cases that say that, I acknowledge that fact, it's my position, Your Honor, that that particular requirement doesn't have anything to do with a required culpable mental state in terms of establishing a crime of violence. What the courts are basically deciding in regard to that particular provision is that that particular provision establishes the physical force that is necessary under the particular crime involved in order to establish a crime of violence. So, for example, what I'm getting at is that in order to have a crime of violence, there's a requirement of physical force. And the particular requirement in the underlying use of a dangerous weapon, that doesn't go to the culpable mental state requirement. Instead, that particular provision goes to the element of physical force. So that if that element is there, it basically establishes the physical force that is required. And the physical force that is required is the physical force. Well, how would you not have intended to do, and if you're putting someone's life in jeopardy with a dangerous weapon, then how would you be doing that without intending to do it? Well, you may very well be intending to do it. You also could perhaps recklessly cause somebody's life to be put in jeopardy by the use of a dangerous weapon. It's not specifically required that you would have to have intent to do that. But I would also add, Your Honor, the facts of the case, I don't think make a difference. It may make a difference in terms of finding guilt or innocence under 2114. But I'm trying to establish that the elements of 2114 don't qualify as a crime of violence under the Elements Clause. And I'm saying that in the Elements Clause, there is a requirement of a culpable mental state, either purposeful conduct, the purposeful use, the purposeful attempted use, or the purposeful threatened use of physical force. There may be a threatened use of physical force. There may be an attempt, an attempted use of physical force. But unless there's something in the underlying statute that requires there be a culpable mental state in terms of the underlying statute, it's not going to qualify as a crime of violence. Do you want to save some time for rebuttal? Yes, I do. Okay, I'm even though I'm going to put you at two minutes for rebuttal because we had some extra time. All right. And I'm sorry, Judge Gilman, I neglected to welcome you to the Ninth Circuit, who's sitting with us on assignment from the Sixth Circuit. So thank you for joining us. Judge Bress and I are delighted to sit with you. You and I have sat many times in the past, and we look forward to it every time. All right. Okay, we'll go to the United States at this point. You have 10 minutes. Thank you, Your Honor. May it please the court, my name is Carla Hodes DeLore, and I represent the United States. Over two years ago, the court issued the Certificate of Appealability in this case regarding whether armed postal robbery is a crime of violence under 924 C3. Since that time, this court in three cases, Williams, Gray, and Simmons, as well as the Fourth, Fifth, and Sixth Circuit have held that aggravated postal robbery by putting the victim's life in jeopardy by use of a dangerous weapon is a crime of violence. The cases from our court you're referring to, those are the unpublished non-presidential cases? That is correct. They are unpublished, but they are still persuasive. And if this court were to hold otherwise, it would be creating both an intra and inter-circuit conflict. Now, the parties agree that this statute 2114A is divisible. And in order to, and that the modified categorical approach applies. Wait a second. I think you have a question. You think the statute is divisible essentially twice over into sort of a basic and aggravating set of categories, and then within the aggravating, you think that's further divisible into three separate offenses? Is that your read of it? Yes, Your Honor. That is my read of it. And that's also what this court held in the Williams decision as well. All right. But Lord, you said the parties agree it's divisible. I don't think the other side agrees it's twice over divisible though. Am I correct? You are correct. They agree that it's divisible into the first clause that lists the basic offenses and into the second clause, the aggravators. Now, the government contends, and in line with this court's decision in Williams, that the second aggravator clause is further divisible into three parts, wounding the victim, putting the victim's life in jeopardy by use of a dangerous weapon, and committing the crime. Has any other circuit delved into it in that level of detail that you just have? No other circuit has iterated it the same that I have. However, other circuits, the Fourth Circuit and Bryant held that it's irrelevant whether that's further divisible because in that case, they knew the defendant was charged with the aggravator of putting the life in jeopardy by use of a dangerous weapon. And so the fact that these courts, they're implicitly finding that it's divisible by looking specifically to which aggravator they were charged with and then analyzing that aggravator. And these published cases from the other circuits, they all have dealt with the aggravator we have at issue here, putting the victim's life in jeopardy through use of a dangerous weapon. And they have found that that satisfies the requisite violent physical force required under the statute. How about the mens rea? Your opposing counsel focused most intently on that. Right. And the mens rea, this court, it satisfies the intentional part as well, and the mens rea. And the important thing is with this statute, it's important to read it or to read the statute and the aggravator all together as a whole. Instead of just parsing out assault or intent to steal or the aggravator separately, it's important to read it all together. And we have the intent here because it's the assault with the intent to steal and in doing so puts the life in jeopardy through use of a dangerous weapon. And so that and this court held in gray that putting the life in an objective state of danger requires the intentional use, attempted use, or threatened use of physical force, which makes it a crime of violence. And in Simmons. Can you address what an impact, if any, the Supreme Court's recent decision in Borden versus United States has on the petitioner's case? Because she's stated that she stated it for a different proposition than I believe you're going to say. Well, the Borden, according to defense counsel, the use of physical force must be purposely or knowingly targeted at the at the person and Borden said you need purposeful or knowing conduct, which is why reckless offenses don't count. And so this this statute is this aggravated statute that we that defendant was charged and convicted with still survives Borden and is a crime of violence. And it's in Borden. The again, this goes to reading the statute as a whole, the assault with intent to steal and the aggravator reading it all at one. This satisfies Borden and this specific intent required in Borden. The government argued about the word against when you were talking use against another and the government in Borden had argued against means the mere recipient of force rather than an intended target. And it gave examples as waves crashing against the shore or baseball hitting against a fence. And if if this view of the government's view where it was indifferent as to whether the conduct was directed at another, then reckless crimes would count. Now in Borden, the defendant had argued that against means in opposition to where it introduces the target of the preceding action. So for example, the chess master played the queen's gamut against her opponent or the general deployed his forces against a rival regiment. And so they said if this against is read as the defendant argues, where it expresses a kind of directedness or target, then reckless crimes don't count. And here now going back to the assault statute here, we have that directedness and target that Borden talks about. And the in Borden, they went with the defense's reading of the word against. And here we have that directedness or target when you're looking at assaulting the person with intent to steal. And in doing so, you put their life in jeopardy by use of the dangerous weapon. So this is directed towards the person that they are assaulting with intent to steal or rob the mail matter. So it satisfies Borden. I have a question I'd like to ask you. What if what if Mr. Buck had used a toy gun? The victim, the postal carrier thought was real, would you still say it was a crime of violence? Well, I would use of it. Well, they'd have to satisfy that the weapon satisfies the dangerous weapon requirement. So if they could say it was an unloaded gun, it wouldn't really put the in fact, it wouldn't put the carrier's life in jeopardy, would it? Well, there could be situations where it could an unloaded gun could put the victim's life in jeopardy. I mean, for we don't know the consequences, but I'd have to look into that further. You know, the reason I ask is there's a nice case called United States versus Martinez Jimenez from 1989 that held a toy gun qualified under Section 2113 D, which is the bank robbery equivalent of the postal statute we're dealing with under 2114. And if a toy gun has been held to be a dangerous put the life in jeopardy, then I don't know that that raise a question of whether it really is something that would qualify as a crime of violence under the categorical approach. Your Honor, I would have to I'm not familiar with the Martinez decision, and I'd be more than happy to look at it and submit a 28 J letter. But I do know in the Simmons case, this court has held that cases interpreting bank robbery and postal robbery have long been authority for each other because the required offense, the required conduct for the offenses is nearly identical. But I'm just not familiar with that case to give you a Again, I think that Borden does not change the fact that this statute aggravated, aggravated assault in this case, aggravated, we say postal robbery, aggravated assault is a crime of violence under 924 C3. So let me clarify one thing is that the government view that the result in this case is squarely controlled by existing precedent, or is the issue whether section 2114 a is divisible, unsettled enough to warrant publication of an opinion in this case. I, I believe the case law is settled enough to where I mean, every case that has Although it is unpublished, that has, okay, I don't want to. But if it's unpublished, then don't you need a published opinion to have something more than persuasive? That is true. And this I would invite the court to issue an opinion finding that cutting off your nose to spite your face here. On the one hand, you're saying it's unsettled, that no one said otherwise, which might be true. But then on the other hand, you're still arguing, you're still arguing unpublished cases in the Ninth Circuit. And I think you conceded earlier, I'm not trying to make your argument for you. But I don't really know why a published opinion wouldn't make things a published opinion, as opposed to something persuasive. No, you are correct. I mean, I guess what I know, I'm pretty sure I'm correct. I didn't mean it like that. I apologize. But I guess what I'm trying to, you know, I think that when you came out blazing here, then Judge Bress said, well, aren't they unpublished? So when you talk about, you know, when we talk about published, or when we talk about unpublished, there's a different standard. So it doesn't mean that you lose, because you acknowledge that. I mean, but on the other hand, we do have to distinguish between those two. And so I'm confused. Well, I don't know if I'm confused. But I think your argument, you don't want to give an inch on your argument, when in fact, the published opinion would be a stronger argument, it would be a case on point, and it's done. Yes, Your Honor, I guess I was not clear in my answer. What I meant, I guess what I meant to say was, under the current case law, published from other circuits and unpublished in this circuit, 2114A, the aggravated version as charged and convicted in this case is a crime of violence. This court could solidify that and make it more clear through a published opinion that in fact, the second clause of this statute is further divisible into the three subcategories, and that that too, even after Borden, satisfies the physical force and mental mens rea required even after Borden, and that it is a crime of violence. I think we have your argument in mind, and we've gone to overtime, but we took you there. So I just want to make sure whether either of my colleagues have any additional questions. Okay, so we'll go back to the appellant petitioner here, and you have two minutes for rebuttal. First of all, I apologize to the court for not being very clear in my opening argument, and I really regret that. What I'm trying to say to the court is that under a modified categorical approach, you are allowed to look at the instructions that were given in Tony Buck's case. And in Tony Buck's case, when you look at all the instructions, not just the enhancement instruction that has to do with putting a life's person in, putting a person's life in jeopardy by the use of a dangerous weapon, you are allowed to look at all of those instructions. And if you look at those instructions, atypically, I think, based upon your experiences, there's nothing in those instructions that, for example, say something must be intentionally caused or something must be knowingly caused. How many instructions have you as judges looked at in criminal cases where that type of word is used? Where in the instructions can you point me to that would allow for a conviction for reckless use of a firearm? Where in the instructions is that? Because I think I asked you that. You asked me that, but I'm not focusing on recklessness at all here. I'm not trying to persuade the court that this was somehow a reckless crime. And because it's a reckless crime, Mr. Buck... That crime could be committed and could be the subject of a conviction for reckless conduct. And where do you think the instructions would permit the jury to do that? I don't think it permits the jury to do anything regarding that because there's simply no direction in these jury instructions as to what type of culpable mental state is required. And I'm not making myself very clear. This isn't about recklessness. What I'm trying to argue to the court is there's nothing in these jury instructions that require any type of culpable mental state. And because it's not there, I'm saying under, for example, a case like Borden or also a Ninth Circuit case, United States versus Begay, which requires that in order to be a crime of violence, there has to be an intentional use, an intentional attempted use, or an intentional threatened use of physical force. You don't have that in the statute. I'm not arguing that the underlying statute is, and I mean 2114, I'm not arguing that that conviction itself is to be set aside. I'm just saying the elements that were presented there do not qualify as a crime of violence. Now, finally, because I know my time is running down here, I want to refer to... You're over time, actually. It's going up. So take 30 seconds and wrap it up, please. Okay. I want to refer to the 28J case that's mentioned, and it's Calvillo-Palacios. And this is a case that was submitted by the government, and it involves a Texas statute. And the determination is, is that Texas statute in fact a crime of violence? And the court there found that it is. I intended to go through the various cases that are referenced in this particular case, and I will do that with the court's remission. United States, via Vicencio Burrell, it says that the particular statute... Okay. I don't think we need you to go through all of them. So please, you're already way over time. So wrap it up in 30 seconds, please. Okay. If I can, Your Honor, I would just, because I can't read it, I guess. I would ask the court to pay attention to footnote nine, which makes it clear that but for the fact in the statute, there was a requirement of intentionality that in point of fact, the Texas statute would have not been considered a crime of violence. So what I'm trying to say is that that culpable mental state was extremely important in the decision in this case. And if you look at those other cases, they all say the same thing in that regard. Thank you very much. And I apologize for going over time. No, that's fine. Thank you both for your arguments. This matter will now stand submitted. The next matter on calendar...
judges: Gilman, CALLAHAN, BRESS